MISSIONARY SOCIETY of the METHODIST EPIS-
COPAL CHURCH el al. *vs.* MARGARET A. HUM-
PHREYS, by Her Husband and Next Friend.—F.
MARION SLEMONS et al., Trustees, *vs.* SAME.

*Rule Against Perpetuities—Invalidity of Trust in Perpetuity for
Charitable Uses.*

When, under the terms of a devise to trustees, the property cannot be
aliened during a life or lives in being and twenty-one years there-
after, the trust creates a perpetuity and the devise is consequently
invalid.

A devise is void because in violation of the rule against perpetuities
when the property is given to trustees to hold the same; collect the
rents and pay the net income, after deducting taxes and expenses,
to certain designated charitable institutions, when there is no limita-
tion to the duration of the trust and the testator intended it to con-
tinue indefinitely.

The rule against perpetuities applies to trusts for charitable or re-
ligious uses as well as to any other trust.

Appeal from a decree of the Circuit Court for Wicomico
County (Page, C. J., Holland and Lloyd, JJ.) The third,
fourth, fifth and seventh items of the will of Miss Willie F.
Hooper, of Salisbury, were as follows:

Item 3. I give and bequeath unto the Committee of the
Wicomico Presbyterian Church, of Salisbury, Wicomico
County, Maryland, and their successors, two hundred and
fifty dollars in trust, to invest the same and to collect the
income therefrom, and to pay one-half of such interest on
the salary of the preacher in charge of said church; one-
fourth of said interest to the Benevolent Board of said
church, and to use the remaining fourth of said interest to
keep the " Hooper Burial Lot," in Parsons Cemetery in
Salisbury, Maryland, in order, in each and every year.

Item 4. I give and bequeath unto the Trustees of the
Asbury Methodist Episcopal Church, of Salisbury, Wicomico
County, Maryland, and their successors, two hundred and

fifty dollars in trust, to invest the same and collect the income therefrom, and to use the interest on two hundred dollars of said sum in paying to the salary of the preacher in charge of said church an amount equal to that subscribed and paid by my mother, Leah Hooper, and my brother, John B. Hooper, in their life-time to same; this amount being in lieu thereof and intended to maintain same in their names forever, and to pay one-half of the interest on the remaining fifty dollars to the Benevolent Board of said church; the other half of said interest to be used in keeping the " Hooper Burial Lot," in Parsons' Cemetery in Salisbury, in good condition in each and every year.

Item 5. I give bequeath and devise my house and lot situated on the North side of Main street in Salisbury, Wicomico County, Maryland, and extending back to West Church street and adjoining the storehouse of Robert E. Powell & Co. on the east, and that of J. Ritchie T. Laws on the west, to F. Marion Slemons, Thos. H. Williams and E. Stanley Toadvin in trust, to hold the said property, and to rent out the same, and collect the income and rents therefrom, and out of said rent or income to pay all taxes, assessments and charges, levied or assessed or that may be levied or assessed on said property, together with the insurance, repairs and other necessary expenses on said property, then to apply the balance of the rent to the payment of any debt I may owe at the time of my death and my funeral expenses; after the payment of my debts and funeral expenses, then to pay one-half of the net amount of rent collected from said property in each and every year, after the payment of the said taxes and expenses on said property, to the Committee of the Wicomico Presbyterian Church, of Salisbury, Wicomico County, Maryland, to be divided by them equally between the Board of Home Missions and Sustentation, the Board of Foreign Missions, the Board of Publication and Sabbath School Work, and the Board of Church Erection of the Presbyterian Church of the United States of America, and to pay one-eighth of the

net income of said property in each and every year to the
Maryland Bible Society for the charitable uses and pur-
poses of said society, and to pay the remaining three-eighths
of the net income from said property to the Trustees of the
Asbury Methodist Episcopal Church, of Salisbury,
Wicomico County, Maryland, in each and every year
to be equally divided between the Board of Extension and
the Missionary Board of the Methodist Episcopal Church
of the United States and the Board of Stewards of the Wil-
mington Annual Conference of the Methodist Episcopal
Church aforesaid, the part paid to said Board of Stewards
to be used for the support of the superannuated ministers.
In the event that either my sister, Margaret A. Humphreys,
her husband, LaFayette P. Humphreys, or their son, L.
Gordon Humphreys, or all of them should in the judgment
of said trustees, or their successor or successors, come to
need help or aid for the support or maintenance of them, or
either of them, then the said trustees or their successor or
successors are hereby directed to pay the whole of the net
incomes of said property from that time in each and every
year to the said Margaret A., Lafayette P. and L. Gordon
Humphreys, or either of them, so long as they or either of
them in the judgment of said trustees, their successor or
sucessors shall need the same, his, hers or their support and
maintenance, but as soon as the necessity for the use of
said incomes for the support and maintenance of said
parties shall cease then the said trustees shall cease the
payment of said income to them or either of them, andf
shall pay over the said net income as first in this item o
my will set forth and directed to do.

Item 7. Should either or all of the trustees named in
the fifth item of this my will die, refuse or decline to serve
or accept said trust, then it is my will and desire that the
Circuit Court for Wicomico County, Maryland, shall
appoint another trustee in the place of the one or more so
dying, refusing or declining to serve ; or in case of all of
them so dying, refusing or declining so to act, to appoint

one or more suitable persons as trustees to take and hold the property described in said fifth item of my will as fully as if they were named in said item, said trust to be under the supervision of said Court.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*James E. Ellegood* (with whom were *G. Grier Radcliff* and *Toadvin & Bell* on the briefs), for the appellants.

We contend that there is a distinction between a charitable use or *public* trust, as it is sometimes called, and a private or ordinary trust for the benefit of specific individuals, and that the rules relating to *uncertainty* and *perpetuity* are not applied alike to both classes of trusts, in that, 1st. The rule against perpetuities has no application to charitable trusts.    2nd. The strict rule of definiteness required in private trusts is not the rule of measurement required for ascertaining the beneficiaries of a public trust.    We do not contend for the doctrine of *cy pres*, as the doctrine of the States of the country in any enlarged sense, though some of the States seem to be more liberal than others in applying the rule of uncertainty.    And we submit that since the year 1884, beginning with the case of *Barnum* v. *Mayor, &c., of Balto.*, 62 Md. 275–292, and continuing through *Eutaw Place Bapt. Church* v. *Shiveley*, 67 Md. 493; *Halsey* v. *P. E. Ch.*, 75 Md. 275; *Hanson* v. *Little Strs.*, 79 Md. 434; *Reilly* v. *Union Prot. Inf.*, 87 Md. 664, and the late case of *Pratt et al.* v. *Trustees Sheppard and Enoch Pratt Hospital*, 88 Md. 610, our own Court of Appeals has shown a commendable spirit of liberality in sustaining wills containing charitable bequests.  Now we submit that there is such a thing as a charitable use *independent* of 43 *Elizabeth*, and that a Court of Chancery has inherent jurisdiction to enforce the trust; that the report of the Record Commission in England and all the later cases sustain this position.    It has been repeatedly said that the statute of 43 *Elizabeth*

created no new law, but only a new and ancillary jurisdiction.

In the case before the Court we have :    1st. Trustees capable of holding the estate.    2nd. Every beneficiary incorporated and capable of taking the equitable use.

The rule against perpetuities is " one of the land-marks of the law ;" but it must be admitted that its application has been productive of much confusion and uncertainty, and nowhere more than in Maryland, since the *Barnum Case*, 26 Md. 119.    In the very able notes to that case in *Perkin's Edition*, the learned annotator declares that the " statement of the rule in this form is not supported by authority or principle."    We beg to refer to the notes as a very succinct and able analysis of the Maryland cases.

The Court below says : " If this trust requires in its execution a longer time than that prescribed by the rule against perpetuties, which renders the property devised to the trustees inalienable during that time, then the law denounces the devise in trust as a perpetuity and declares it void."    If we clearly apprehend the authorities in Maryland, in applying this rule to the trust-estates, the estate which the Court refers to is not the *legal estate* in the trustees, but the equitable estate in the *cestui que trust*.    The policy of the law being to promote a speedy or early vesting of the estate, it was not allowable for a testator or grantor to circumvent the law by a gift to his descendants through the medium of a trust.    *In re Stickney's Will*, 83 Md. 83, the learned Judge below rested his decision on the *Barnum's case*, 26 Md. 119, and yet the Court of Appeals made no reference thereto in rendering its decision.    These cases, with the notes to *Barnum's case*, will illustrate the confusion into which able counsel and judges have been thrown by the application of the principle in that case.

It is plain that the trustees have a vested interest, but the crucial question is not what is their interest or estate, but what are the conditions or limitations that make the equitable interests void.    It begs the whole question to say

"there is no power of sale given to the trustees;" that "the trust is of indefinite duration;" and that "no period is fixed when the trust shall terminate." These assumptions ignore the real question; where is the limitation that renders the vesting of the equitable estate too remote and void. Lewis speaks of it as "a *future* limitation, etc., which is not to vest until after the period." *Lewis on Perpetuities*, 164. He defines it as follows: "A perpetuity may be defined to be a future limitation restraining the owner of the estate from aliening the fee-simple of the property, discharged of such future use or estate before the event is determined or period is arrived, when such future use or estate is to arise. If that event or period be within the time prescribed by law it is not a perpetuity." *Lewis on Perpetuities*, 689.

If we were to treat this as a devise directly to religious corporations it would not violate the perpetuity rule, however obnoxious it might be to the mortmain feature of the Constitution. No advantage can be taken of this until an opportunity is had to obtain the sanction of the Legislature. *England* v. *Vestry, etc.*, 53 Md. 466; *Church Extension* v. *Smith*, 56 Md. 389. In *Am. & Eng. Ency. of Law*, vol. 18, p. 362, under the caption "Charitable Trusts" it is said: "The rule has to do with the time of vesting of an estate and in no wise affects its continuance after it has once vested. A striking characteristic of charitable trusts is that they continue forever. They are perpetuities, using the word in its natural sense."

In *Perrin* v. *Carey*, 24 Howard, 465, there was an inhibition of sale, but the Court ruled that it "made no perpetuity in the sense forbidden by law and equity in cases of charitable trusts." We venture to say there is no case in Maryland where the rule has been applied to charitable trusts. It is a misapplication of the case of *Attorney-Genl.* v. *Dashiell*, 6 H. & J. 1, to speak of it as so deciding. The decisions in the leading cases of *Attorney-General* v. *Dashiell* are based on two reasons: 1st. Because it was for "the

benefit of the poor children, etc.," who were too uncertain ; and 2nd. Because being for their successors, "who not being a body corporate were incapable of taking in succession." The first were too "indefinite and vague," and the latter had no legal being. If the beneficiaries had been incorporated, there is a clear inference that the bequest would not have been void as they could have taken both immediately and in succession.

*John Prentiss Poe* and *Robert P. Graham*, for the appellees.

The entire fifth clause of the will is void because it creates a trust to which there is no limit of time. No power of sale or investment is given to the trustees, nor is the trust to terminate upon the death of the last survivor of the three named trustees ; but by the seventh item of the will the testatrix provides that in the event of death or refusal to serve of any or all of the trustees, the Circuit Court for Wicomico County shall appoint another trustee in the place of the one or more so dying or refusing to serve. The intention of the testatrix is thus made plain that this trust shall continue forever. There is no difficulty, therefore, as to the construction of the will ; it plainly creates an indefinite trust, and such was the actual intent of the testatrix. Hence the rule against perpetuities palpably applies to such case and absolutely avoids the trust and the devise. The Maryland cases upon the subject are too clear to admit of doubt. The later cases of *Collins* v. *Foley*,63 Md. 162–3; *Albert* v. *Albert*, 68 Md. 352; *Dulany* v. *Middleton*, 72 Md. 76–77; *Thomas* v. *Gregg*, 76 Md. 169, reaffirm the principle so clearly stated in *Barnum* v. *Barnum*, 26 Md. 171; *Deford* v. *Deford*, 36 Md. 168, and *Goldsborough* v. *Martin*, 41 Md. 501.

In the present case the estate is devised to the trustees, and they are charged with the duty of renting the property and collecting the rent and paying it over for a period absolutely without limit. No power is given to them to put an end to the trust, and if the intention of the testatrix

can be carried out, the trust must continue forever.    No
life in being here enters into the measure of time, but in
such cases the rule is well settled that the time is limited
to twenty-one years.    The authorities on this point are
perfectly clear.    Thus, in *Lewis on Perpetuities*, chapter 14,
section 6: " It is to be observed that whenever lives in be-
ing do not form part of the time of suspension or postpone-
ment, the only period allowable under the rule against
perpetuities is twenty-one years absolutely."    So in *Jar-
man on Wills*, page (247), 216: " Where the vesting of a
gift to unborn persons is postponed for a fixed term ex-
ceeding twenty-one years, the gift is unquestionably void,
although not preceded by a life.    *For the fact that the tes-
tator not having availed himself of the allowance of a life
does not enable him to take a longer term of years.*"    *Palmer*
v. *Halford*, 4 Russ. 403–407: The testator left the
property to trustees to divide among the children of his
son who should be living at the end of the twenty-eight
years from the testator's death.    No lives in the measure.
The Court held that the devise was void for remoteness
and the gift over, void.    ₀.

*Speakman* v. *Speakman*, 8 Hare, 180: Devise for support
of testator's children for fifty years, then to be divided.
No measure of lives at all ; simply fifty years.    Devise held
void as transgressing the rule against perpetuities.

*Kimball* v. *Crocker*, 53 Me. 272: Devise of forty thousand
dollars to be kept invested for twenty-five years after tes-
tator's death.    The Court say :  " Whenever lives in being
do not form part of the time of suspension or postpone-
ment, the only period under the rule against perpetuities is
twenty-one years absolutely."

To the same effect is the case of the *Commissioners of
Donation* v. *DeClifford*, 1 Drury and Warren, 254, where
the Court say : That "limitations over to a charity do not
differ from any other, but to be effective must be confined
within the usual period."

Decisions may perhaps be cited from the Courts of some

of our sister States indicating that in such States the trust here under examination might be maintained, but it is a sufficient answer to all such decisions to say that they are founded upon a public policy with reference to religious and charitable uses which does not prevail in Maryland.

FOWLER, J., delivered the opinion of the Court.

The question presented by these appeals arises on the construction of the will of the late Willie F. Hooper, of Wicomico County.   Mrs. Margaret A. Humphreys, by her husband, filed a bill in the Circuit Court for that county in which she alleged that the third, fourth and fifth clauses of her sister's will are void.   The defendants were duly summoned and answered.   The case was heard by the Court below on the bill, answers and testimony, and after argument a decree was passed declaring that the third and fourth clauses are valid, so far as they relate to the provision therein respectively in favor of the preacher who may be from time to time in charge of said churches respectively; but void so far as the same made provisions for the benevolent boards and the keeping in good condition of the " Hooper Burial Lot."   The decree further declared that the fifth paragraph of the will is void, and that title to the house and lot therein devised to trustees in trust, to rent the same and pay the net rent as therein directed, vested in the plaintiff as sole heir and residuary devisee upon the death of the testatrix.   From this decree the trustees named by the testatrix in the fifth item of her will have appealed ; and several of the beneficiaries of the trust have also appealed ; but both appeals present the same questions.   The appellants made no objection in this Court to that portion of the decree which relates to the third and fourth paragraphs ; hence the sole question left for our consideration relates to the validity of the devise contained in the fifth paragraph of the will.   It is as follows :   " I give, devise and bequeath my house and lot   *   *   *   to F. Marion Slemons, Thomas H. Williams and E. Stanley Toadvin *in trust*, to

hold the said property, and to rent out the same, and collect the incomes and rents therefrom." The testatrix directs her trustees, after the payment of her debts and funeral expenses, to pay the net rent from year to year to a number of incorporated bodies and boards for charitable purposes in certain proportions designated by her.

The contention of the appellee, and this contention was sustained by the Court below, is that the devise in the fifth paragraph is void because it creates a trust to which there is no limit of time. Upon an examination of the will itself we not only fail to find an express limitation to the duration of the trust, but the testatrix makes express provision for its indefinite continuance in the seventh paragraph of her will by providing for the appointment of trustees to succeed those she had named in case of the death, resignation or refusal of the latter to serve. We think there can be no doubt as to the intention of the testatrix. She intended by the creation of this *trust* to make a perpetual provision for the objects of her bounty. Can we, under the well and long-established law of this State, effectuate that intention? We certainly cannot if we adhere to the well-considered decisions of this Court from the case of *Barnum* v. *Barnum*, 26 Md. 119, down to the present time. In the case just cited it is said that "The first and very important question which arises on this statement of the contents of the will  *  *  * is whether the period described in the will, through which the leasing by the trustees is to run, transgresses the rule against perpetuities." It was held that the period of leasing so designated by the testator did plainly violate the rule, and in disposing of the question this Court said : " If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement, and twenty-one years and fraction of a year  (*  *  *)  afterwards, during which time the property would be withdrawn from the market, or the *power over the fee suspended*, it is a perpetuity.  *  *  *  *  The question whether an estate is a perpetuity, generally arises in cases in which a future

contingent estate or executory devise is limited upon a fee, and if the contingency upon which the executory estate is to vest, is not necessarily to happen within the time fixed by the rule as the legal boundary, then the precedent estate or estates are denominated a perpetuity, and the executory estate or devise fails for want of a legal estate to support it. *   *   *   The object of the rule is to prevent the tying up of property, real or personal, and rendering it inalienable longer than the period designated by it.   For that time the power over the *inheritance* or *absolute interest* of property may be suspended, but no longer."

" In the case now under consideration no question is presented as to the future vesting of an executory estate in order to determine the validity of the preceding one, but simply whether *the trusts of the will* require in their execution a longer period than that prescribed by the rule against perpetuities, and therefore render *the property devised to the trustees inalienable during that time.   If so, the law denounces the devise in trust as a perpetuity* and declares it void."

In *Deford* v. *Deford*, 36 Md. 178, (C. J. BARTOL being the only Judge who sat in that case and also in *Barnum* v. *Barnum*), MILLER, J., in delivering the opinion of the Court said, referring to *Barnum* v. *Barnum :* " All the reasoning in that case applies here, and we regard it as binding and conclusive authority which must, notwithstanding the very able argument of counsel to the contrary, control our judgment in the present case.   The Courts in prescribing and settling the rule against perpetuities have founded it in true wisdom.   They have thereby limited the indulgence of the natural inclinations of men to fix control over their property after death    *   *   *    by a careful consideration and regard for those larger principles of public policy which are essential to the welfare of communities and States. "    " The decision in *Barnum's case*," continued the Court, " is a fair and just application of the rule."   And *Perry on Trusts*, sections 382 and 383, is cited where it is said :   " A per-

petuity will no more be tolerated when it is covered by a trust than when it displays itself undisguised in the settlement of a legal estate." In *Goldsborough* v. *Martin*, 41 Md. 501, it is said, that " the rule against perpetuities is one of the established landmarks of the law ; " and the rule as applied to trusts in *Barnum* v. *Barnum* and *Deford's case, supra*, is approved and reaffirmed. We quote from *Deford's case*, the following language which is peculiarly appropriate to the case now before us: " Power is given to the trustee to appoint some one to succeed her in the trust after her death, and this of itself would render possible the continuance of the trust far beyond the prescribed limit. But, besides this, if the trust were valid, and the testator's intention could be carried into effect, a Court of Equity would be bound to supply a trustee to execute the trust * * * to remote generations."

It was suggested that a power to raise money out of rents and profits includes a power to sell and mortgage for the purposes of the trust, and that the trustees under Miss Hooper's will being required to pay taxes and debts, they *may* be required to sell the trust property—but, whether this be so or not, we will not stop to enquire, for even if the testatrix had given power to her trustees to sell the trust property the difficulty would not have been removed. In *Deford's case*, it is said: " The fact that the testator, in another clause of his will, empowers his trustees to change the investments and reinvest as often as may be deemed proper, by *making sales* or otherwise, does not change the nature of the trust, which *may* extend beyond the time limited, and does not therefore extricate the case from the operation of the rule ; the *possibility* of such continuance the law regards as decisive in determining the question of perpetuity or not." The rule of perpetuities as applied to trusts in *Barnum* v. *Barnum* has been approved also in *Stannard* v. *Barnum*, 51 Md. 449; *Heald* v. *Heald*, 56 Md. 309; *Collins* v. *Foley*, 63 Md. 162; *Albert* v. *Albert*, 68 Md. 372; *Dulaney* v. *Middleton*, 72 Md. 78; and *Thomas* v. *Gregg*, 76 Md. 174.

But the contention, on the part of the appellants, is that this settled rule, this " landmark of the law," has no application to charitable trusts, and counsel ventured to assert that there is no case in Maryland in which it has been so applied.    There are, however, at least two cases where the rule has been directly applied to such trusts.    In the old and leading and very familiar case of *Dashiell* v. *The Attorney-General*, 5 H. & J. 392, the devise was for " poor children belonging to the congregation of St. Peter's Church, &c."   The devise was held void because the trust was indefinite and because it created a perpetuity.    The decision just cited was so construed in the case of *Needles* v. *Martin*, 33 Md. 618, where the devise for a charitable purpose was also held to be void because it was too vague as well as because it was a perpetuity.    But ever since the case of *Dashiell and The Attorney-General* it has been held in Maryland that the Statute of 43 *Eliz.* has never been in force in this State, and therefore there is no distinction here, as in many other States and in England, between a bequest to charitable uses and other objects.    *Dashiell* v. *Attorney-General, supra ; The Provost, etc.,* v. *Abercrombie,* 46 Md. 173; *Yingling* v. *Miller et al.,* 77 Md. 107.

Hence it will be seen that in spite of the criticism of " the learned annotator " whose notes to *Barnum* v. *Barnum* are published in *Perkins' Edition,* 26 Md. 119, and were so much relied on at the hearing, we feel constrained to adhere to the law as announced in that case.    It is apparent, however, that this course must tend to benefit rather than injure the prospects of charitable trusts in this State in the future, because testators like all others will be required to know and act upon the well-settled law of the State, and they will therefore give *directly* and absolutely to charitable trusts what they have to give for such purposes, and they will not appear to give freely with one hand while they hold on to their gifts with the other, and by means of trustees attempt to control property which they have parted with.    In the recent case of *Pratt's Will,* 88 Md. 615, it is

evident that the testator was well advised by counsel, and, as we held, avoided the error of creating a trust. He gave directly to the corporation itself. In the case just cited, in this Court's opinion, recently delivered by the present Chief Judge, it was shown very clearly by reason and authority that no trust was or was intended to be created.

But if the contention of the appellant be correct, such a course was altogether unnecessary, for, as suggested by counsel for appellee, if the perpetuity rule does not apply to devises and bequests to religious and charitable uses, this Court, in the case of Mr. Pratt's will, could have decided the question very easily by holding that whether there was a trust or not was immaterial, because if there was no trust the rule confessedly did not apply, and if there was a trust it did not apply because the devise was in favor of a charitable institution.

It follows from what we have said that we entirely agree with the view taken of this case by the learned Court below.

*Decree affirmed with costs.*

(Decided April 6th, 1900.)