(Decided November 16th, 1898.)

---

THOMAS E. YOUNG *vs.* JEREMIAH WARD AND OTHERS.

*Tax Sales—Irregular Proceedings—Effect of Order of Ratification—Presumption—Failure of Purchaser to Obtain Deed—Equitable Title—Ejectment.*

An order of Court ratifying a tax sale gives rise to the presumption that the proceedings were regular. But this presumption is rebutted when the proceedings leading up to the order are shown to be defective and in violation of statute.

An order ratifying a tax sale under a statute which contemplates the execution of a deed to pass the legal title, can

only give the purchaser an equitable title unless the statute otherwise provides, and such title is ordinarily not sufficient to defeat an action of ejectment by the former owner.

When a statute requires that a full report of all the proceedings relating to the tax sale shall be made to a Court, it is not complied with by a report which refers to a book containing the requisite information, which book is kept in the county treasurer's office and entries made therein subsequently.

Code Local Laws, Art. 17, sec. 116, etc., provides that the treasurer of Prince George's County shall advertise the property upon which taxes are in arrear and sell the same after notice. It is also provided that he shall make a full report to the Circuit Court in Equity setting forth the proceedings, with the notice, and showing at what price the particular property was sold, to whom, the amount of the taxes, etc. Provision is also made for the ratification of all unopposed sales. In this case the treasurer filed in one equity case a book purporting to set forth all the sales in a certain year and in another equity case in which the sale of plaintiff's land for taxes was reported, there was no such return as was required by statute but reference was made to the book filed in the other case. This book was kept in the treasurer's office and he made entries in it from time to time. There was a general order of Court ratifying all unopposed sales. It could not be ascertained from the exhibits in the equity cases or from the book what property had been sold or what had been redeemed. *Held,* that there had been a substantial failure to comply with the provisions of the statute and that the order of ratification was too indefinite to give validity to a sale in this case.

Another section of said article provided that if the land sold for taxes should not be redeemed within two years, the treasurer of the county should make a deed in fee of the property which should be *prima facie* evidence of title. There was no provision for reporting the redemption of land to the Court that ratified the sale, and the money therefor was payable to the treasurer. Plaintiff, the owner of land sold for taxes, the sale having been ratified in the manner above stated, sued defendant, the purchaser in ejectment,

more than two years after the sale. *Held*, that if the defend-
ant had not obtained a deed from the treasurer for the land
he could not set up the sale to him as a bar to the action.

Appeal from the Circuit Court for Prince George's
County (CRANE and MERRICK, JJ.)

The cause was argued before McSHERRY, C. J.,
BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and
PEARCE, JJ.

*Jos. S. Wilson* (with whom was *C. C. Magruder* on the
brief) for the appellant.

For the appellee, the case was submitted on the brief
by *Charles H. Stanley* and *Joseph K. Roberts.*

BOYD, J., delivered the opinion of the Court.

The appellees instituted an action of ejectment against
the appellant for a part of a tract of land in Prince
George's County called the "Levels." At the trial
they offered evidence tending to prove their legal title
and right of possession to the property in dispute and
the damages suffered by them in consequence of being
ejected, and the defendant then offered in evidence the
papers in No. *1962* Equity in the Circuit Court for
Prince George's County, being the report of sales of the
treasurer and collector of State and county taxes of that
county, with exhibits, and final order of ratification
thereof, under and by which the defendant claims title
as purchaser at a tax sale of the property sued for, and
in conjunction therewith a book marked "Exhibit C.,
No. *1900* Equity," which had been filed in that case and
which is referred to in the report of sales and claimed to
be an exhibit in this case. The plaintiffs objected to
the introduction of the papers and book in evidence and
the Court having sustained the objection, the defendant
excepted and thus brings the principal question before
us.

Under the local laws for Prince George's County the

treasurer is made collector of State and county taxes and sections 116 to 116 G of Art. 17 of the Code of Public Local Laws, as amended by Chap. 137 of the Laws of 1890, prescribe the method of his procedure for collecting taxes. It is provided that on the second Monday of January of each year the treasurer shall publish for six consecutive weeks a list of all taxes in default and not collected by him from personal property, and that on the first Monday of March he shall proceed to sell any and all pieces of such property on which the taxes have not been paid, and shall continue such sale each secular day until every parcel shall have been so offered. The treasurer is required by section 116 E to make a full report to the Circuit Court of the County, on the Equity side thereof, " setting forth his proceedings in the premises in detail, with copy of the printed list and notice aforesaid and also showing to whom, at what price and for what sum of money actually received by him such several parcels were sold respectively, the amount of tax, of interest accrued, of penalties, of *pro rata* cost of advertising such sale, and of the surplus fund in each instance." No order *nisi* is passed, as contemplated by the general law, but section 116 provides that the general notice of sale when published as required " shall have all the force and effect of a summons to appear in said Court on the thirtieth day after the first day of such sale to show cause why such sale should not be ratified and confirmed," and section 116 E provides that in respect of all parcels so reported sold, against the ratification whereof no cause shall be shown, the Court " shall forthwith proceed to consider and determine the same as in the case of default to appear after summons duly served, and in one decree to ratify and confirm each and every such unopposed sale."

The treasurer reported to the Court in No. *1962* Equity his proceedings in reference to his sales for taxes for the year 1891, referring to the notice given, etc., and showing that he had commenced the sales on March 7, 1892, and continued the same on the 8th and 9th of that month, and the only description of the property

sold, to whom, at what prices, etc., given in the report is as follows:

" That said treasurer and collector has transcribed and alphabetically indexed in a well bound book, namely, the book filed as Exhibit C in No. *1900* Equity, Exhibit C, on May 23rd, 1891, with his report of tax sales for the year 1890, a list of all and each and every parcel of land mentioned and described in said published lists and sold as aforesaid on which the taxes aforesaid, interest accrued to the time of payment, penalties and *pro rata* share of costs, had not been paid prior to the sale of the said parcels of land as aforesaid, showing to whom and at what price, the said several parcels of land were sold respectively, the amount of tax, of interest accrued, of penalties, of *pro rata* cost of advertising such sale, and the amount of surplus resulting from any such sale which said record in so far as it may be necessary to comply with the provisions of said law relating to his report of said sales he prays to have considered as a part of this report. And accordingly submits as a part thereof, but respectfully states that its custody in his office is indispensably necessary for the performance of the duties imposed on him by said Act herein referred to, and for the greater convenience of the people and taxpayers interested in the said redemption or otherwise of the several parcels of land sold as aforesaid.

" He respectfully submits, however, that he is advised that in any case in which exceptions to any sale embraced in said list may be filed, the said book or certified copies of all the entries relating to any particular parcel of land may be produced and offered in evidence as occasion and the rules and practice of the Court may require."

By agreement of counsel the original book was brought before us. From an examination of it we find that it contains a copy of the part of the advertisement which gives the notice of sales to begin on the 7th day of March, 1892, and then follows what are claimed to be memoranda of the treasurer's sales made by him on the 7th, 8th and 9th days of March, 1892, for taxes for the

year 1891—there being about one hundred and eighty
in all.   On the one side of the book, as it is opened, ap-
pears the name of the party against whom the taxes are
levied, the amount of State and county taxes and in-
terest, the *pro rata* charges for advertising, auctioneer's,
clerk's and treasurer's fees and the sum of these amounts.
On the opposite page is what appears to be a description
of the property, cut out of the printed advertisement
and a certificate signed by the purchaser.   They are
substantially the same and the one we are interested in
is as follows:

> "*Jeremiah Ward.   "The Levels," con-
> taining 6 acres, more or less.   For a fuller:
> description see deed recorded in Liber H. B.
> 12, folio 237.*
>
> *State and County taxes for 1891 . . . . 4.15*

$137.00.   This is to certify that I have this, 8th day of
March, 1892, bought at tax sale of James T. Perkins,
Col. & Treas. for the year 1891, for the sum of one
hundred and thirty seven dollars the property described
in the above advertisement.

>                    (Signed) ·    Thomas E. Young."

The portion in italics is the printed slip apparently
taken out of the advertisement of sales.   On many of
the statements are such memoranda as " the property
has been redeemed," " settled," " deed," etc., which are
generally made in red ink and at dates subsequent to the
filing of the report.   In some instances the names below
the certificates of purchase are in lead pencil and in
others an endorsement of " no bidder " is made on the
certificate.   As can be gathered from the part of the
report above quoted, the treasurer, although nominally
filing the book as an exhibit, retained it in his office.
That the treasurer felt at liberty to make such entries
in the book as in his opinion became necessary is appar-
ent from his report and the numerous entries he has
made, and although he was doubtless acting in accord-
ance with what he believed his right and duty, he was
from time to time changing the exhibit which it is

claimed is a part of the proceedings in the equity case in which he made his report. Although nominally an exhibit filed in the Circuit Court, it was in reality a book kept and used by the treasurer, after it was so filed, in which to make entries affecting the properties therein mentioned. When section 116 E so minutely prescribed what should be inserted in the treasurer's report, it was certainly never contemplated that the law would be gratified by referring to a book kept in the treasurer's office—especially a book in which entries were being made from time to time. The book had been originally made an exhibit in No. 1900 Equity, and if it had been kept with the papers in that case it would be a very questionable practice to adopt, to refer to it for the description of the properties, names of the purchasers, etc., but when it is in reality not kept in Court, but in the treasurer's office, it is a practice that should not be tolerated.

The order of ratification by the Court is " that each and every unopposed sale embraced in said report be and the same is hereby ratified and confirmed." There is nothing whatever to show what sales *were unopposed*, unless it be the recital in the former part of the order that " no cause in writing having been shown against the ratification of any sale embraced in said report," etc. If in point of fact the former owner of any of the properties redeemed them before this order of ratification was passed, the sales would still have been included in the order, if the theory of the appellant is correct, that this book must be accepted as part of the report. If the treasurer neglected to enter on the book before the order of ratification that a property had been redeemed,. there would be nothing in the case to exempt that property from the effect of the order. In short, the treasurer undertook to make the records of his office a part of the report to the Court and those records were being frequently changed by him. The report actually on file and remaining in the clerk's office is meaningless. No one could ascertain there whether his property had been sold and no one could from that book say with certainty

what sales of properties were actually intended to be ratified by the order or decree of the Court. The book may have been very useful to the treasurer, but he ought to have included in the report itself or in some exhibit to be kept in the clerk's office, the data required by the law to be reported. The order of the Court ratifying and confirming " all unopposed sales " is too indefinite under the evidence before us to give it any validity, as we find nothing in the record, excepting the book, that in any way attempts to designate the property sold.

It is contended on behalf of the appellant that the order of ratification gave a *prima facie* title to the appellant and if there were any irregularities in the manner in which the sale was conducted they had to be established by the appellees, and to sustain that position the cases of *Guisebert* v. *Etchison*, 51 Md. 478; *Steuart* v. *Meyer*, 54 Md. 454, and *Cooper* v. *Holmes*, 71 Md. 20, are cited. Having already said that the order of ratification is too indefinite to be effective, it is perhaps unnecessary to say more on that subject. But those cases hold that the order of ratification is only *prima facie* evidence of the title, and that the regularity of the proceedings can be inquired into. The appellant having offered the proceedings, and they being found to be defective, the presumption which ordinarily arises by the passage of an order of ratification is rebutted by those defects. Under section 116 D of this local law, if the property is not redeemed within two years from the day of sale, the treasurer is required to make " a deed in fee of such property, which deed shall be received and held to be *prima facie* evidence of a good and perfect title in fee to the property so bought." Taking that section in connection with the other provisions of this local law, it may well be questioned whether the order of ratification does establish a *prima facie* title to the property, as it was held in *Cooper* v. *Holmes*, 71 Md. 20, it did under the local law then in force for Prince George's County, but even if that be conceded, still if the appellant has a deed, he could have offered it and cast the burden on the appellees to rebut it and the order of ratification need

not have been offered by him. This suit was instituted in June, 1897, more than five years after the sale of the property by the treasurer, and hence more than three years after the time for redemption had expired. If he had a deed, the papers showing the prior proceedings were wholly immaterial, so far as his defence is concerned, and the refusal to admit them in evidence could have done him no harm. If he had not during those three years, or more, obtained the deed—which the law under which he claims to have purchased declares shall be the *prima facie* evidence of title, after the time for redemption has expired—he should not be permitted to set up the order of ratification as a bar to an action of ejectment, even if it had been regularly passed. But an order of ratification of a sale, in a proceeding under a statute which contemplates the execution of a deed to pass the legal title, will only give the purchaser an equitable title unless the statute otherwise provides, and an outstanding equitable title is ordinarily not sufficient to defeat an action of ejectment. *Sanders* v. *McDonald*, 63 Md. 503. Without deeming it necessary to determine in this case, as it is not involved in it, what the rights of the purchaser at a tax sale under this law would be, as against the former owner of the property who instituted an action of ejectment against the purchaser within the two years allowed for redemption, it is clear that after the expiration of that time an order of ratification of a sale made under this law cannot defeat an action of ejectment. This statute does not authorize the owner, who desires to redeem, to pay the money into court, as the general law does (sec. 56 of Art. 81 of Code), but the payment is to be made to the treasurer (sec. 116 D), and there is no provision for the redemption being reported to the Court that ratified the sale, or of its being made a matter of record in that Court. If in point of fact the owners of this property had redeemed it within the time allowed by law, manifestly it would be unjust to require them to furnish evidence of that fact (which evidence, not being of record, might be lost or inaccessible) in order to meet the effect

of the order of ratification of the sale and if they did not redeem it the law made it the duty of the treasurer to execute a deed and the appellant could demand it if entitled to it. Under these circumstances he should have produced the deed if he desired to offer evidence of the sale to him to defeat this action, and the previous proceedings were not necessary for his defence and hence were wholly irrelevant and immaterial.

The exception taken to the granting of the prayer offered by the plaintiff was not pressed in this Court. There might be some question as to the damages authorized by that prayer, but as the jury only allowed one cent no injury was done the appellant. The judgment must be affirmed.

> *Judgment affirmed, costs to be paid by the appellant.*

(Decided, November 16th, 1898.)